**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------
**IN RE RUBY G. EMANUEL,**

                Debtor.                  10 Civ. 2964 (JGK)

**KENNETH HELLER,**                                 **OPINION AND ORDER**

                Appellant,

     - against -

**RUBY G. EMANUEL,**

                Appellee.
-------------------------------------

**JOHN G. KOELTL, District Judge:**

     Kenneth Heller appeals from an order of the United States Bankruptcy Court for the Southern District of New York (Bernstein, J.) entered on January 11, 2010, denying his claim for legal fees and expenses. See In re Ruby G. Emanuel, 422 B.R. 443 (Bankr. S.D.N.Y. 2009). The appellant has also moved for an order directing non-party appellee Jacoby & Meyers ("J&M") to disclose the name and contact information of the mediator in a related, settled state court action. See Emanuel v. Sheridan Transp. Corp., 779 N.Y.S.2d 168, 172-74 (App. Div. 2004). In response, J&M has filed a motion for sanctions. The appellant has also sought to stay decision of the appeal pending decision of a motion for an evidentiary hearing.

I.

On December 17, 1992, the husband of the debtor in the bankruptcy proceeding below was severely injured while performing repairs on a barge in dry dock at the Brooklyn Navy Yard.  His injuries rendered him a quadriplegic, and ultimately resulted in his death 20 months later.  <u>Emanuel</u>, 779 N.Y.S.2d at 170-71.  The debtor, individually and as the administrator of her husband's estate, retained the appellant to file a wrongful death action against the barge owner and other entities, asserting claims for negligence and for violations of the Jones Act, 46 U.S.C. § 2101 et seq., and the New York Labor Law.  Prior to the trial, on July 28, 1997, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701, et seq.  By order dated August 10, 1999, the trustee of the bankruptcy estate retained the appellant, on a contingency fee basis, to prosecute the wrongful death action as special counsel.  <u>In re Emanuel</u>, 422 B.R. at 445 & n.1.

The Jones Act and Labor Law claims were dismissed before trial, but the negligence claim was tried to a jury in 1999.  The jury found the barge to be unseaworthy and the defendants to be negligent.  The jury awarded the debtor nearly $25 million in damages, but the trial court reduced that amount to $7,613,566.  Following the entry of judgment, both sides appealed.  <u>Id.</u>

The Appellate Division vacated the judgment and remanded the case for a new trial. It noted that the decedent "fell squarely within the longshoreman category and squarely outside that of seaman," Emanuel, 779 N.Y.S.2d at 174, and that, as a result, special standards of liability for cases involving seamen did not apply to the case. Because the trial court had mistakenly instructed the jury on the basis of those standards, "the court's jury instructions on the issue of negligence did not accurately reflect the law," id. at 175, and a new trial was warranted. A dissenting justice would have reversed the judgment below, rather than remanding for a new trial, on the ground that the evidence presented at trial was insufficient as a matter of law to establish the defendants' negligence. Id. at 182-83 (Marlow, J., dissenting).

On June 24, 2004, the appellant was disbarred on charges not related to this case, including a "24-year history of sanctions, [and] his perverse and persistent refusal to accept adverse rulings, reflective of an utter contempt for the judicial system . . . ." In re Heller, 780 N.Y.S.2d 314, 319 (1st Dep't 2004).

After the appellant was disbarred, the Bankruptcy Court approved the retention of J&M as substitute special counsel to the trustee, on a contingency fee basis. In re Emanuel, 422 B.R. at 446. J&M sent a letter to the appellant requesting the

files in the wrongful death case.  The appellant refused the request.  Id.  J&M obtained an order to show cause why it should not be substituted as counsel of record for Emanuel, and why the appellant should not be forced to turn over the case files in his possession.  The appellant opposed the motion, and cross-moved for an order granting costs of $300,000 to $400,000, and legal fees of $12,184,332.50, on a quantum meruit theory.  He asked that J&M be required to pay these sums immediately or to secure the obligation, as a condition to the release of the case files.

On January 13, 2006, the New York State Supreme Court issued an order substituting J&M as counsel for Emanuel and directing the appellant "to turn over the complete, original file of the underlying action" to J&M by February 16, 2006.  It warned that failure to comply would result in sanctions.  Id. at 447.  The appellant did not comply, and on March 28, 2006, the state court issued an order directing the appellant to show cause why he should not be held in contempt.  A second, similar order to show cause was issued by the court on December 26, 2006.  The appellant again failed to respond, and was held in contempt of court pursuant to an order dated January 26, 2007.  The order stated that the appellant could purge himself of the contempt by turning over all records within 20 days.  He failed to do so, and on February 26, 2007, a warrant was issued for his

4

arrest.  In re Emanuel, 406 B.R. 634, 635 (Bankr. S.D.N.Y. 2009).  The appellant was arrested and sentenced to 30 days' incarceration and a $10,000 fine.  The Appellate Division temporarily stayed the incarceratory portion of his sentence, but the stay was dissolved May 8, 2007.  Id.  On May 29, 2009, the Appellate Division affirmed the order of contempt and the appellant's sentence, and found that his failure to comply with the trial court's previous orders had caused "resulting prejudice to plaintiff's right to a new trial in this action for maritime wrongful death."  Emanuel v. Sheridan Transp. Corp., 870 N.Y.S.2d 912, 913 (2009).

    Without the benefit of the appellant's files, which were never produced, J&M continued its representation of the debtor in the wrongful death action, and procured a $3.65 million settlement that the trustee accepted.  On August 18, 2008, the trustee filed a motion to approve the settlement, to award J&M attorney fees, and to deny the appellant compensation.  On November 10, 2008, the Bankruptcy Court approved the settlement and authorized distributions from the settlement proceeds to various creditors and the debtor.  In re Emanuel, 422 B.R. at 447-48.  It reserved decision, however, on the allocation of fees as between the appellant and J&M, on the ground that an evidentiary hearing would be required to resolve the appellant's quantum meruit claim.

5

On July 1, 2009, the Bankruptcy Court held such a hearing. Id. at 446. The arrest warrant for the appellant stemming from the state court contempt order was outstanding, and the appellant did not appear at the evidentiary hearing. The evidence adduced at the hearing on his behalf consisted of the following: (1) testimony by John Coulter, a maritime attorney who had worked with the appellant on the case, (2) testimony by an associate, Susan Harmon, and (3) time records created by Harmon.

Coulter testified as to the appellant's reputation as a maritime lawyer. The Bankruptcy Court appears to have given this testimony little weight, on account of the fact that "Coulter ha[d] apparently been working with Heller on this matter, and was charging him $200.00 per hour for his testimony." Id. at 450 n.8. The bankruptcy judge found Coulter's testimony to be "sincere," but attributable to "his loyalty to one who is essentially his client." Id.

The time records purported to catalog the work the appellant and Harmon had done in the course of the state court litigation. However, Harmon testified that the records, while dating back to 1992, had been created in August 2005; that she had based her time entries on her memory of what had occurred, but that she had no current recollection of the work, and was not even sure the time records introduced at the hearing were

6

the same ones she had prepared in 2005; that the time entries were "rough estimates" and "guesses"; and that she had assigned time "arbitrarily." Id. The Bankruptcy Court also noted that the time records were "inaccurate on their face," because they "included entries relating to services rendered prior to the accident and after Heller's disbarment"; in many cases were missing times, dates, or descriptions of the work allegedly performed; contained duplicate entries; and contained entries that were "wildly excessive." Id. at 451 & n.11. For these reasons, the Bankruptcy Court concluded that the records were not "probative or credible," id. at 450, and did not provide a "reasonable approximation" of the time the appellant had spent working on the case, id. at 451.

The Bankruptcy Court also found Harmon's testimony to be incredible as a whole. When confronted with an affidavit that contradicted her testimony, she "conceded that the affidavit was 'literally not true,'" invoked her rights under the Fifth Amendment to the United States Constitution, and refused to answer further questions on the subject. Id. at 450 n.10.

The Bankruptcy Court noted that the appellant could not point to any tangible benefit he had provided to the debtor, because he had "ultimately lost the [wrongful death] case." Id. at 451. It noted that the state court had found that the appellant's failure to turn over his files to J&M "caused

7

'resulting prejudice to [the debtor's] right to a new trial,'" because the files contained evidence that could not be located elsewhere.  Id. at 452 (citing Emanuel, 870 N.Y.S.2d at 913).  It rejected the appellant's argument that the state court Record on Appeal, to which J&M had access, contained everything J&M needed to litigate the case, on the grounds that: (1) the appellant had not offered the Record on Appeal into evidence, and thus there was no way to know "what it contained[,] much less that it contained everything that J&M needed"; (2) the Record on Appeal "filled only one or two boxes, while Heller had 43 boxes"; and (3) many potentially important items, including "notes of witness interviews, diary notes, the portions of depositions that were not read at trial, and videos of Mr. Emanuel, photographs, memos and witness statements," were not part of the Record on Appeal.  Id. (internal citation omitted).

On the basis of the foregoing, the Bankruptcy Court ruled, in a decision dated December 23, 2009, that the appellant had failed to sustain his burden of coming forward with evidence to demonstrate that he had conferred a benefit on the debtor.  The court found that this failure required the denial of his quantum meruit claim for attorney's fees.  Id. at 453.

After the evidentiary hearing, but before the Bankruptcy Court issued its ruling, Saul Rudes, an attorney and an unpaid judgment creditor of the appellant, wrote to the court to

8

request an opportunity to be heard and to argue that the appellant should receive a substantial attorney's fee award. The court explicitly declined to take the letter into account in its ruling, on the bases that (1) as the creditor of a creditor, Rudes lacked standing to be heard, and (2) "to the extent he had relevant evidence to offer regarding Heller's quantum meruit fee, the place to do so was at the trial."  Id. at 450 n.9.

## II.

### A.

When reviewing an order of the Bankruptcy Court, this Court acts as an appellate court.  Accordingly, the Court reviews the Bankruptcy Court's conclusions of law de novo, but accepts its findings of fact unless they are clearly erroneous.  See Fed. R. Bankr. P. 8013; see also In re Halstead Energy Corp., 367 F.3d 110, 114 (2d Cir. 2004); Taunton Mun. Lighting Plant v. Enron Corp. (In re Enron Corp.), 354 B.R. 652, 654 (S.D.N.Y. 2006). The Bankruptcy Court's evidentiary rulings are subject to review for abuse of discretion.  See Automodular v. Delphi Corp. (In re Delphi Corp.), 394 B.R. 342, 344 (S.D.N.Y. 2008).  An abuse of discretion occurs where a court "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment

9

of the evidence," or "render[s] a decision that cannot be located within the range of permissible decisions." Sims v. Blot, 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks and citation omitted).

**B.**

The appellant devotes the majority of his moving and reply briefs to attacking, in various ways, the validity of the settlement that was negotiated by J&M and approved by the Chapter 7 trustee and the Bankruptcy Court. The appellant did not appeal from the November 10, 2008 order of the Bankruptcy Court that approved the settlement. His current Notice of Appeal is limited to

> each and every part of that certain Order of the United States Bankruptcy Court, Southern District of New York (Bernstein, J.), entered on or about January 11, 2010 . . ., as well as the whole thereof, which ordered, inter alia, that 1) Kenneth Heller's claim for legal fees and expenses in this matter is denied and that 2) Jacoby & Meyers's application for fees and expenses is granted . . . .

Brief of Appellee Alan Nisselson, as Chapter 7 Trustee of Ruby G. Emanuel, Ex. A, at 1.

A notice of appeal "must designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). The scope of the notice of appeal determines the subject matter

10

jurisdiction of this Court.  See New Phone Co. v. City of New York, 498 F.3d 127, 131 (2d Cir. 2007).  While the Court is compelled to "construe notices of appeal liberally," a notice that "fail[s] to mention" a specific order does not confer subject matter jurisdiction as to that order on the reviewing court.  Shrader v. CSX Transp., 70 F.3d 255, 256 (2d Cir. 1995).  Accordingly, the appellant's arguments, insofar as they attack the propriety of the settlement approved by the Bankruptcy Court, are not properly before this Court.[1]

C.

A disbarred attorney may be compensated on a quantum meruit basis for services rendered prior to his disbarment, provided that the misconduct does not relate to the representation for which compensation is sought.  See In re Bagen, 201 B.R. 642, 644 (S.D.N.Y. 1996); Decolator, Cohen & DiPrisco, LLP v. Lysaght, Lysaght & Kramer, P.C., 756 N.Y.S.2d 147, 150-51 (App. Div. 2003).  An award in quantum meruit should in all cases reflect the Court's assessment of the qualitative value of the services rendered, made after weighing all relevant factors

---

[1] Furthermore, any appeal from the November 10, 2008 order of the Bankruptcy Court approving the settlement now appears to be time-barred.  See Fed. R. Bankr. P. 8002(a) (setting fourteen-day period for appeals from orders of a bankruptcy court).

11

considered in valuing legal services. Padilla v. Sansivieri, 815 N.Y.S.2d 173, 174 (App. Div. 2006). The relevant factors include the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of performance by counsel, the amount at issue, and the results obtained (to the extent known). Sequa Corp. v. GBJ Corp., 156 F.3d 136, 148 (2d Cir. 1998); Decolator, 756 N.Y.S.2d at 151.

**D.**

There is no basis to disturb the Bankruptcy Court's decision refusing to award attorney's fees to the appellant. That decision was well founded and not clearly erroneous. The Court carefully analyzed the evidence, assessed the credibility of the witnesses and concluded that the appellant had failed to prove that he had conferred a benefit on the estate. Indeed, based on its well-reasoned analysis, the Bankruptcy Court found that the appellant had harmed the estate by failing to turn over his files, which made the task of successor counsel more difficult.

In the course of his 75-page brief, the appellant raises only one evidentiary issue that merits discussion: the court's refusal to consider the content of the letter submitted by Saul

Rudes after the evidentiary hearing on the appellant's entitlement to fees. Notably, the appellant nowhere argues that the Bankruptcy Court erred in finding that the only relevant evidence submitted on his behalf at the hearing – namely, the time records and the testimony by Harmon – was "[n]either . . . probative [n]or credible."  In re Emanuel, 422 B.R. at 450.

In the letter, Rudes sought an "opportunity to be heard" with respect to the appellant's claim for attorney's fees, on the ground that Rudes "ha[d] an interest in [the] fee application."  Letter from Saul Rudes to Hon. Stuart M. Bernstein (July 9, 2009), at 1.  Rudes had such an interest, he asserted, because he was a "judgment creditor" of the appellant, and "it would be in [his] interest to see Heller prevail in his present fee application so that [Rudes] could execute against the fee due to [Heller] in partial satisfaction of [the] judgment."  Id.  Rudes then proceeded to assert that the appellant "should be entitled to a substantial fee," given: "[t]he history of the verdicts in [the wrongful death] case"; that "[n]ormally, trial counsel receives the bulk of the fee award"; that "the work done by Heller dwarfs the work of Jacoby and Meyers by a long shot"; and that "Heller was an expert in maritime personal injury work."  Id. at 2.  Finally, Rudes asserted that he had been in possession of a "substantial amount of the files" from the wrongful death case, that he had offered

13

those files to J&M, and that J&M had declined the offer – the implication being that J&M's efforts to recover on the debtor's behalf could not have been prejudiced by the appellant's refusal to turn over his files.  Id.

The Bankruptcy Court explicitly declined to consider the content of Rudes's letter on two grounds:  First, it found that, "[a]s a creditor of a creditor, [Rudes] lack[ed] standing to be heard," and second, "to the extent [Rudes] had relevant evidence to offer regarding Heller's quantum meruit fee, the place to do so was at the trial."  In re Emanuel, 422 B.R. at 450 n.9.  Both of these grounds were correct.

First, insofar as Rudes sought to assert his own interest in the bankruptcy estate, by virtue of his status as the appellant's creditor, he lacked standing to do so.  See In re Comcoach Corp., 698 F.2d 571, 573-74 (2d Cir. 1983) (A party asserting an interest "must be either a creditor or a debtor to invoke the court's jurisdiction."); Southern Blvd., Inc. v. Martin Paint Stores, 207 B.R. 57, 61 (S.D.N.Y. 1997) ("A creditor, under the Code, is one who has a claim against the debtor or the estate.  The concept does not, according to the Second Circuit, encompass a creditor of one of the debtor's creditors." (emphasis in original)).

Second, to the extent the appellant now argues that the Bankruptcy Court should have considered Rudes's letter as

14

evidence of the appellant's entitlement to legal fees, the Bankruptcy Court acted well within its discretion in declining to do so. As the Bankruptcy Court noted, the letter was unsworn, and was submitted after the appellant had already had a full and fair opportunity to litigate his claim at an evidentiary hearing.

Moreover, the letter does not support the award of attorney's fees to the appellant. Rudes's opinion as to the appellant's entitlement to fees would have merited little deference, given that Rudes, according to the letter, stood to receive <u>all</u> of the money the appellant collected as attorney's fees, on account of a pre-existing judgment lien. Letter at 3. The letter was, moreover, almost entirely cumulative of evidence already before the court. The lone exception was Rudes's assertion that he had offered J&M a "substantial amount of the files" from the wrongful death case. <u>Id.</u> at 2. Even if credited, however, that unsubstantiated, unsworn assertion was of no probative value, because (1) it did not specify which files Rudes had allegedly offered to J&M – and, in particular, whether they consisted of the Record on Appeal, to which J&M indisputably had access, and (2) it could only conceivably have been used to show that J&M "was not prejudiced by Heller's misconduct in refusing to turn over the files," <u>id.</u> at 2-3, a conclusion that was barred by a preclusive state court ruling to

15

the contrary.  Emanuel v. Sheridan Transp. Corp., 870 N.Y.S.2d at 913 ("[A]ppellant's disobedience of successive court orders unequivocally directing him to turn over his file to plaintiff's new attorney . . . result[ed in] prejudice to plaintiff's right to a new trial . . . .").

The Bankruptcy Court's refusal to consider the Rudes letter was thus not error, and the appellant has not even argued that the Bankruptcy Court erred in rejecting the remainder of his evidence as to the value of the services he performed for the debtor.  Therefore, the Bankruptcy Court correctly concluded that the appellant failed to establish his entitlement to recover on a quantum meruit basis.  Accordingly, the judgment of the Bankruptcy Court is affirmed.

## III.

The appellant has moved for an order directing J&M to disclose the name and contact information of the mediator who assisted in negotiating the settlement of the debtor's wrongful death action in the state court.  The appellant seeks this information so that he can attempt to subpoena the mediator, "in order . . . to obtain pertinent information related to the settlement . . . which is necessary for purposes of [the] argument on appeal."  Aff. in Support of Motion, at 7.  As

16

discussed above, the validity of the settlement is not at issue in this appeal.  Accordingly, the appellant has not established that he is entitled to the information requested, and the motion is denied.

**IV.**

In response to the appellant's motion, J&M has moved for "costs, sanctions, and attorney's fees . . . due to the frivolous nature of this motion."  Affirm. in Support and in Opp'n, at 4.  Nowhere in its motion or the supporting affidavit, however, does J&M make clear the legal theory on which it seeks sanctions.  This omission is fatal to the motion, because the prerequisites for liability depend on the particular theory advanced.  See generally Sassower v. Field, 973 F.2d 75 (2d Cir. 1992) (discussing differing procedural and substantive standards for sanctions under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the Court's "inherent authority").  More generally, J&M has failed to show that this request was so frivolous as to warrant an award of sanctions.  Accordingly, the motion for sanctions is denied.

V

After argument of the appeal, the appellant sought to stay decision of the appeal pending decision of his motion for an evidentiary hearing, for which he would subpoena the debtor to determine whether she was completely advised of her federal maritime rights before she agreed to the settlement.  This application is dilatory and seeks a hearing plainly aimed at challenging the settlement.  However, the validity of the settlement is not properly at issue on the appeal, and an appeal is not the proper forum for an evidentiary hearing challenging the settlement.  The application for a stay is denied and the motion for an evidentiary hearing is also denied.

## CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically discussed, they are either moot or without merit.  For the reasons stated herein, the decision of the Bankruptcy Court is **affirmed**; the appellant's motion to compel disclosure of the mediator's identity is **denied**; J&M's motion for sanctions is **denied**; and the appellant's request for a stay and his motion for an

evidentiary hearing are **denied**.  The Clerk is directed to close all pending motions, and to close this case.

SO ORDERED.

Dated:  New York, New York
        March 26, 2011

                                         /s/ John G. Koeltl
                                         John G. Koeltl
                                         United States District Judge